USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 11/10/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

N.M., individually and on behalf of C.B.M., a child with a disability,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

26 Civ. 6836 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, N.M., brings this action individually and on behalf of her child, C.B.M., seeking emergency injunctive relief compelling Defendant, the New York City Department of Education (the "DOE"), to fund and implement a specific pendency program ordered by an Impartial Hearing Officer ("IHO") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j). *See* Compl. ¶ 1, ECF No. 1. Before the Court is Plaintiff's motion for a preliminary injunction. Mot., ECF No. 11; *see also* Mem., ECF No. 15; Opp., ECF No. 20; Reply, ECF No. 25. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I. IDEA Legal Framework

The IDEA "requires states receiving federal special education funding to provide children with disabilities with a free appropriate public education ('FAPE')." *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023) (citing 20 U.S.C. § 1400(d)(1)(A)). Participating states must "develop an administrative review process for parents who are dissatisfied with their child's education and wish to challenge [its] adequacy" to meet the child's individualized needs. *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525–26 (2d Cir. 2020). To meet this requirement, New York State "has implemented a two-tier system of administrative review." *Mackey ex rel. Thomas M. v. Bd. of*

*Educ. for the Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160 (2d Cir. 2004) (internal quotation marks and citation omitted). First, a parent files an administrative complaint requesting a hearing before an impartial hearing officer. *Id*. (citing N.Y. Educ. Law § 4404(1); 20 U.S.C. § 1415(f)). "The party aggrieved by the [IHO's] decision may then proceed to the second tier, an appeal before a state review officer." *Ventura de Paulino*, 959 F.3d at 526 (internal quotation marks and citation omitted). Following the state review officer's decision, parties may seek judicial review. *Id.*

"The IDEA contains a 'stay-put' or 'pendency' provision which provides that 'during the pendency of any proceedings,' the child is entitled to 'remain in [her] then-current educational placement' at public expense." *Mendez*, 65 F.4th at 59 (quoting 20 U.S.C. § 1415(j)). The pendency provision of the IDEA, 20 U.S.C. § 1415(j), applies during administrative and judicial appeals of an IHO decision. *See Mackey*, 386 F.3d at 160 n.1 (quoting 34 C.F.R. § 300.514(a)); *see also* Opp. at 6 (conceding the same). Instead of remaining in the current placement, a parent can alternatively "determine that the program would be better provided somewhere else, enroll the child in a new school, and then seek retroactive reimbursement from the school district after the . . . dispute is resolved," but she does so at her "own financial risk." *Ventura de Paulino*, 959 F.3d at 534.

IDEA's pendency provision functions as, "in effect, an automatic preliminary injunction." *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). On a motion for a preliminary injunction seeking compliance with the pendency provision, therefore, the inquiry turns "on identifying 'the then-current educational placement.'" *Id.*

II. <u>C.B.M.</u>

N.M.'s thirteen-year-old daughter, C.B.M., has a disability and requires special education services. N.M. Decl. ¶¶ 1–2, ECF No. 14. C.B.M. has been diagnosed with Autism Spectrum Disorder and Epilepsy, and she "has severe and global deficits in all areas of functioning." IHO's Findings of Fact and Decision, Case No. 249982 [hereinafter "2024–25 FFOD"], at 4, ECF No. 12-2.

Every year from 2016 to 2025, IHOs have determined that DOE denied C.B.M. a FAPE, which she was entitled to under the IDEA, so C.B.M has relied on private service providers for educational services at public expense. N.M. Decl. ¶ 4; *see also Mendez*, 65 F.4th at 59 (citing 20 U.S.C. § 1400(d)(1)(A)).

In 2024, N.M. initiated a case before an IHO regarding her daughter's services during the 2024–25 school year ("the 2024–25 Case"). N.M. Decl. ¶ 5. The IHO determined that the DOE failed to provide C.B.M. a FAPE during the 2024–25 school year. *See* 2024–25 FFOD at 11. The IHO also ordered the DOE to fund the cost of C.B.M.'s private school tuition and a home-based program including twenty hours per week of applied behavior analysis and other therapies for the 2024–25 school year. *Id.* at 11–12. The record does not identify the provider responsible for C.B.M.'s home-based services.

On July 1, 2025, N.M. initiated a case before an IHO regarding C.B.M.'s services during the 2025–26 school year (the "First 2025–26 Case"). *See* ECF No. 22-1. As memorialized in pendency implementation forms dated September 11 and 22, 2025, the DOE agreed to fund the same services ordered in the 2024–25 Case during the pendency of the First 2025–26 Case, including tuition at C.B.M's private school and the home-based program. *See* ECF No. 22-2.[1] However, by letter dated December 4, 2025, SPARTA, the private school identified in the pendency implementation forms, provided formal notice that it was "discontinuing therapeutic services" for C.B.M. *See* ECF No. 22-3. The school agreed to provide services to C.B.M. while she "await[ed] a new placement . . . to help minimize any interruption in treatment," so long as "morning pick-ups and afternoon drop-offs occur[red] at an alternate location" where N.M., who had had negative interactions with school staff, was not present. *Id.*; *see also* IHO's Findings of Fact and Decision, Case No. 296060 [hereinafter "First 2025–26 FFOD"], at 6, ECF No. 22-4. N.M. modified the relief sought in the First 2025–26

[1] The September 22, 2025 form adds funding for daily transportation. *See* ECF No. 22-2.

Case accordingly: instead of tuition at C.B.M.'s private school, N.M. sought "an order for the [DOE] to provide a school program with push-in and at-home ABA therapy." ECF No. 22-3. Until the DOE identified a new placement, N.M. also requested the services that C.B.M. was receiving "be provided by an independent provider of the parent's choosing." First 2025–26 FFOD at 3 (citation omitted).

On January 12, 2026, the IHO adjudicating the First 2025–26 Case concluded that the DOE did not demonstrate that it provided C.B.M. with a FAPE during the 2025–26 school year. *Id.* at 7. However, the IHO also denied N.M.'s requested relief, concluding that the "only appropriate relief is to order the DOE to conduct all evaluations of [C.B.M.] deemed necessary, . . . consider all evaluative data, and develop an appropriate [individualized education plan]." *Id.* at 9. The IHO declined to issue an order addressing services during the pendency of the proceedings, finding that (1) the pendency implementation forms signed by DOE were controlling, and (2) the fact that C.B.M. left her private school precluded pendency funding. *Id.* at 5–6. N.M. sought review of this decision before the Office of State Review, the administrative body that adjudicates appeals of IHO decisions, and that appeal is currently pending. Newhouse Decl. ¶ 7, ECF No. 22.

On January 27, 2026, N.M. initiated another case regarding C.B.M.'s services for the 2025–26 school year (the "Second 2025–26 Case"). *See* ECF No. 12-3. N.M.'s administrative complaint did not mention the First 2025–26 Case. *Id*. On March 18, 2026, the IHO assigned to the Second 2025–26 Case issued a pendency order (the "2026 Pendency Order") requiring the DOE to fund the home-based component of the services ordered by the 2024–25 FFOD. *See* ECF No. 12-4. The 2026 Pendency Order indicated that the DOE contested pendency but had failed to submit any argument by the deadline. *Id.* It also stated that the "pendency program shall be retroactive to the date of filing . . . and, unless modified by a subsequent order or agreement, shall continue until the conclusion of the case." *Id.* The IHO issued the 2026 Pendency Order without knowledge of the First 2025–26 Case. Newhouse Decl. ¶¶ 1, 9; *see also* Reply at 6.

Pursuant to the 2026 Pendency Order, N.M. sought a new agency to provide home-based services to C.B.M. N.M. Decl. ¶ 9. In the spring of 2026, C.B.M. began receiving, and the DOE began paying for, home-based services from the Together They Grow agency. Geiger Decl. ¶¶ 6–12, ECF No. 13; *see also* ECF No. 12-7 at 4 (email from DOE employee stating that the services directed by the 2026 Pendency Order were "authorized").

On April 10, 2026, the IHO dismissed the Second 2025–26 Case with prejudice, reasoning that the First 2025–26 Case barred its adjudication under principles of *res judicata* and collateral estoppel. *See* Interim Decision on Mot. to Dismiss at 7–9, ECF No. 12-5. N.M. filed a notice of intent to seek review of the decision the same day. *See* ECF No. 12-6. The DOE cross-appealed the 2026 Pendency Order. *See* ECF No. 22-10, at 6–9. The DOE stopped payments following the dismissal order, initially informing N.M.'s attorney that the case was "withdrawn and closed" and then that the DOE would "not implement pendency while the appeal is ongoing." ECF No. 12-11, at 7, 11. Together They Grow has continued to provide services to C.B.M. notwithstanding the DOE's nonpayment but stated that "if the pendency is not reauthorized by [] October, [they] will have to stop services and ask the [p]arent to begin remitting payment." Geiger Decl. ¶ 24. N.M. cannot afford to pay out-of-pocket for C.B.M.'s services "for even one week." N.M. Decl. ¶ 12.[2]

On August 11, 2026, N.M. brought this action seeking an injunction requiring the DOE to comply with the 2026 Pendency Order. *See generally* Compl. In the alternative, N.M. asks "that the DOE be ordered to fund or directly provide" pendency services to C.B.M. Reply at 5.

## DISCUSSION

### I. Applicable Standard for Injunctive Relief

The DOE states, without justification, that the traditional preliminary injunction standard applies to this case. *See* Opp. at 5. It does not. *See Zvi D.*, 694 F.2d at 906. N.M. does not seek

[2] N.M. has also initiated an administrative case with respect to the 2026–27 school year. Newhouse Decl. ¶ 15.

relief beyond the scope of the IDEA's pendency provision, such as fast-tracking payments, which could bring this action outside the scope of the statute's automatic preliminary injunction. *See Mendez*, 65 F.4th at 63. Rather, she seeks funding for services that she contends qualify as C.B.M.'s then-current placement. *See* Reply at 3. This claim is squarely subject to the automatic preliminary injunction. *See Zvi D.*, 694 F.2d at 906–07. The sole question for the Court, therefore, is identifying C.B.M.'s then-current educational placement for pendency purposes.

II. <u>Then-Current Educational Placement</u>

The term "then-current educational placement" in the pendency provision refers to the last agreed-upon educational program between the parent and the state, prior to the parent's initiation of administrative proceedings. *Ventura de Paulino*, 959 F.3d at 532; *see also Mackey*, 386 F.3d at 163 (collecting cases). Once a pendency placement has been established, it can only be changed by: (1) an agreement between the parent and the state, (2) an IHO decision that is not appealed, (3) a state review officer decision agreeing with the parent, or (4) a determination by a court. *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 324 (S.D.N.Y. 2005) (citing 34 C.F.R. § 300.514(c); 8 NYCRR § 200.5(l)(2)); *see also Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 483–84 (2d Cir. 2002) (holding that a parent's successful challenge to her child's educational program establishes a "then-current educational placement").

The record establishes that the last agreed-upon educational program for C.B.M. is memorialized in the pendency implementation form dated September 22, 2025, which provides for tuition at C.B.M.'s then–private school, SPARTA, and a home-based therapeutic program. *See* ECF No. 22-2 at 2. Neither the First 2025–26 Case nor the Second 2025–26 Case has resulted in a new educational placement for pendency purposes. Because the DOE contested and appealed the 2026 Pendency Order, *see* ECF No. 22-10, at 6–9, the 2026 Pendency Order does not independently establish a pendency placement. *See Gabel*, 368 F. Supp. 2d at 324; *see also Mendez*, 65 F.4th at 59

(explaining that "funding for a new placement" is available under the pendency provision "if an IHO . . . finds it to be appropriate and issues a pendency order, *and the school district does not appeal the decision*" (emphasis added)).

The fact that the pendency implementation form names SPARTA, which has since discontinued services for C.B.M., does not preclude pendency funding. "The term 'educational placement' refers only to the general type of educational program in which the child is placed—*i.e.*, the classes, individualized attention and additional services a child will receive." *Ventura de Paulino*, 959 F.3d at 519. Under the pendency provision, C.B.M. is, therefore, entitled to funding for the general type of educational program described in the pendency implementation form, notwithstanding her disenrollment from a specific school. But "it is the [DOE], not the [p]arent[], that is authorized to decide how (and where) the [s]tudent['s] pendency services are to be provided." *Id.* at 533. Because N.M. unilaterally selected a new placement, *see* N.M. Decl. ¶ 9, she may seek reimbursement on a retroactive basis, but she may not compel public funding of her chosen provider while proceedings are pending. *See Ventura de Paulino*, 959 F.3d at 526–27.

N.M. argues that *Ventura de Paulino* is inapposite because C.B.M.'s private school, not N.M., decided to disenroll C.B.M. *See* Reply at 4–5. There may be circumstances when, in light of the pendency provision's purpose as "a protective mechanism" for children with disabilities, pendency funding would be appropriate for a provider that was unilaterally selected by a parent, on an emergency basis, to avoid interruption in her child's services. *Schutz*, 290 F.3d at 483–84. This is not that case. C.B.M.'s private school expressly offered to continue services until a new placement was located. *See* ECF No. 22-3. Additionally, N.M. explains that the home-based services at issue "were never part of [the private school placement]," and the private school's "decision to stop providing services ended only the tuition component" of her pendency program. Reply at 4.

Accepting that these services were distinct, N.M. offers no explanation for why she obtained a new provider for home-based services after C.B.M. was disenrolled from private school. N.M. Decl. ¶ 9.

That said, N.M. is correct that "*Ventura de Paulino* lets the DOE decide *how* pendency services are delivered, not *whether*" services are delivered. Reply at 5. The record reflects that, since the appeal of the Second 2025–26 Case, the DOE has not identified a provider for C.B.M. and states that "it will not provide or pay for" C.B.M.'s services while proceedings are pending. N.M. Decl. ¶ 13. This conduct is inconsistent with the DOE's obligations pursuant to the pendency provision. The DOE must offer C.B.M. the general type of educational program described in the pendency implementation form until the conclusion of the First 2025–26 Case and the Second 2025–26 Case. *Ventura de Paulino*, 959 F.3d at 526; *Mackey*, 386 F.3d at 160 n.1 (quoting 34 C.F.R. § 300.514(a)).[3] If N.M. opts to decline the DOE's proposed placement and proceed with her unilaterally chosen provider, the DOE is not required to pay that provider during pendency—but it must give N.M. a genuine option. *Ventura de Paulino*, 959 F.3d at 534 (describing parents' "options" under the IDEA).

III. <u>Bond</u>

In addition to her substantive requests, N.M. asks that the Court dispense with the security requirement of Federal Rule of Civil Procedure 65(c). *See* Mot. at 2. "Rule 65(c) has been read to vest broad discretion in the district court to determine the appropriate amount of an injunction bond, including the discretion to require no bond at all." *New York v. Admin. for Child. & Fams.*, 833 F. Supp. 3d 361, 404 (S.D.N.Y. 2026) (internal quotation marks and citations omitted). A district court may exercise its discretion to deny bond if there is no proof of likelihood of harm to the non-movant. *See IME Watchdog, Inc. v. Gelardi*, 732 F. Supp. 3d 224, 243 (E.D.N.Y. 2024). Here, the DOE has

[3] N.M.'s attorney's failure to mention the First 2025–26 Case in his Second 2025–26 Case filings, although concerning, has no impact on the DOE's obligations under the pendency provision. It is "Congress'[] policy choice that all [] children [with disabilities], *regardless of whether their case is meritorious or not*, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Schutz*, 290 F.3d at 484 (quoting *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 83 (3d Cir. 1996) (emphasis added)).

neither requested a bond nor shown that an injunction ordering it to comply with its statutory obligations will likely result in harm. *See, e.g.*, *Heisman Trophy Trust v. Smack Apparel Co.*, 595 F. Supp. 2d 320, 329 (S.D.N.Y. 2009) (waiving bond when opposing party did not request it and had made no showing of harm). A court may also deny bond if a plaintiff's limited means would effectively preclude them from maintaining the action were bond required. *Rivera v. Town of Huntington Hous. Auth.*, No. 12 Civ. 901, 2012 WL 1933767, at *7 (E.D.N.Y. May 29, 2012) (collecting cases). N.M.'s limited financial resources weigh in favor of declining to impose a security requirement. *See* N.M. Decl. ¶ 12. The Court, therefore, grants N.M.'s request to dispense with the Rule 65(c) security requirement.

## CONCLUSION

Accordingly, N.M.'s motion for a preliminary injunction is DENIED IN PART, to the extent that as the Court denies N.M.'s request for an injunction directing Defendant to comply with the 2026 Pendency Order, to make payments to Together They Grow, and to pay for pendency services delivered but not funded from January 27, 2026.

The motion is GRANTED IN PART, to the extent that the Court orders the DOE to offer C.B.M. the type of educational program reflected in the September 22, 2025 pendency implementation form, and, if N.M. elects to proceed with such program, to maintain it until the earliest of the following: (1) both the First 2025–26 Case and the Second 2025–26 Case have concluded; (2) the parties agree to a new educational placement; or (3) the termination of this action.

By **November 25, 2026**, the parties shall file a joint letter explaining how they propose to proceed. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 11.

SO ORDERED.

Dated: November 10, 2026
New York, New York

ANALISA TORRES
United States District Judge